# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

Nicholas Wade,

                Plaintiff,      Case No. 1:16-cv-00095

v.                            Michael L. Brown
                                United States District Judge

Solomon Daniels, et al.,

                Defendants.

_____/

## ORDER ADOPTING THE REPORT AND RECOMMENDATION IN PART [DKT. 60], GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [DKT. 50], DENYING PLAINTIFF'S MOTION TO AMEND [DKT. 63] AND DENYING PLAINTIFF'S MOTION TO APPOINT COUNSEL [DKT. 64]

Before the Court is the Magistrate Judge's Final Report and Recommendation ("R&R"), which recommends granting in part and denying in part Defendants' Motion for Summary Judgment. (Dkts. 50, 60). Both parties have filed objections. (Dkts. 62, 63). Also before the Court are Plaintiff's Motion to Appoint Counsel (Dkt. 64) and Motion to Amend. (Dkt. 63).

I.    Background

A.    Facts

In February 2014, Investigators of the DeKalb County Sherriff's Department were looking for Plaintiff to arrest him for the murder of his girlfriend's 18-month old son.  Dkts. 50-3 at 2; 50-4 at 2; 50-5 at 2.[1] Investigators Wilson, Jones, and Daniels were part of the search and had reason to believe Plaintiff was armed and dangerous.  *Id.* Investigators Daniels and Wilson met with Jillian Belk, Plaintiff's girlfriend, and asked for help finding Plaintiff.  Dkts. 50-3 at 3; 50-4 at 3.  Ms. Belk later called the officers, told them that she had arranged to meet with Plaintiff, and agreed to let them follow her to that meeting. *Id.*  Investigator Daniels placed his phone in her vehicle, on mute, so he could hear the conversation between Plaintiff and Ms. Belk.  Dkt. 50-3 at 14.

Ms. Belk met Plaintiff at an apartment complex and drove him to a church parking lot.  Dkts. 1 at 7; 50-4 at 5; 50-5 at 3-4.  Plaintiff was

---

[1] Defendants dispute many of Plaintiff's factual allegations. But for the purpose of qualified immunity, the Court must resolve all disputed issues of material fact in Plaintiff's favor.  *See Robinson v. Arrugueta*, 415 F.3d 1252, 1257 (11th Cir. 2005).  The facts set forth here represent Plaintiff's "best case."  *Id.*

sitting in the front passenger seat.  Dkts. 50-3 at 5-6; 50-4 at 5; 50-5 at 4.  The officers followed them in two cars.  *Id.*  When the officers heard Ms. Belk say she was scared, they decided to stop her and arrest Plaintiff.  Dkt. 50-4 at 5-6.  After exiting their vehicles, the officers approached Ms. Belk's car with their weapons drawn, Investigators Jones and Beach on the passenger side, Investigators Wilson and Daniels on the driver side.  Dkts. 1 at 8; 50-3 at 5-6; 50-4 at 6.

Investigator Daniels saw Plaintiff holding a sawed-off shotgun to his own chin.  Dkts. 1 at 8; 50-4 at 6.  Fearing that Plaintiff might be about to commit suicide, Investigator Daniels yelled, "No, Don't do it."  Dkt. 50-3 at 6.   Plaintiff then swung the gun in the direction of Investigator Jones.  Dkts. 50-3 at 6; 50-4 at 6; 50-5 at 4.  Seeing this movement, Investigator Daniels fired, striking Plaintiff three times – once in the head, once in the shoulder, and once in the leg.  Dkts. 1 at 8; 50-3 at 6; 54-5.  He told the other officers he had shot Plaintiff, opened the driver-side door of the car, and placed the vehicle in park, keeping Plaintiff at gunpoint because he was still moving.  Dkt. 50-3 at 6; 50-4 at 6; 50-5 at 5.  Investigator Beach opened the passenger door, placed Plaintiff in handcuffs, and removed the shotgun.  Dkt. 50-5 at 5.

3

Investigator Beach asked for bandages with which to tend Plaintiff's wounds.  *Id.*  Investigator Jones could not find bandages, but gave Investigator Beach napkins, which she used to apply pressure to the gunshot wounds.  Dkt. 50-5 at 5.

According to Plaintiff, an officer held him down as he lay "slummed [sic] over the B.M.W.'s center console."  Dkt. 54-2 at 1. Plaintiff claims that he had trouble breathing because of blood in his lungs.  Dkt. 1 at 9. He claims that he asked the officer restraining him to remove her hands so that he could sit up, but the officer continued to restrain him.  Dkt. 54 at 3.  Plaintiff struggled against the officer, eventually removing the officer's hands from his head so he could sit up. Dkts. 1 at 9; 54 at 3.  Plaintiff claims that when he did so, Investigator Jones struck him in the mouth with his pistol, chipping his tooth.  Dkts. 1 at 9; 54 at 3; 54-1 at 2; 54-2 at 1.

The exact time of the shooting is uncertain but is estimated to have occurred around 2:03 p.m.  (Dkt. 50-7).  After the shooting, Investigator Wilson immediately instructed another officer on the scene, Investigator Wortham, to request an ambulance.  Dkt. 50-4 at 7. The officers communicated "shots fired" over the radio at 2:07, and

4

requested an ambulance at the same time.  (Dkt. 50-7).  The ambulance arrived on the scene at 2:16, and transported Plaintiff to Grady Memorial Hospital at 2:39.  *Id.*  Plaintiff states that he remained in the car without medical aid for thirty minutes.  Dkt. 1 at 9.

Plaintiff was convicted of malice murder and cruelty in the first degree for killing Ms. Belk's son.  (Dkt. 50-9).  He was also convicted of aggravated assault, aggravated battery, aggravated assault on a peace officer, possession of a firearm during the commission of a felony, and possession of an illegal weapon.  (Dkt. 50-10).  The assault and weapons charges arose from his possession of the sawed-off shotgun on the day of his arrest and his actions in pointing the shotgun at the officer before being shot.  (Dkt. 50-8).

### B.   Procedural History

Plaintiff filed a complaint alleging that (1) Defendants Daniels, Wilson, and Jones violated his constitutional rights based on the use of deadly force in shooting Plaintiff or failing to prevent the shooting, (2) Defendant Spears violated his constitutional rights in depriving him of air following the shooting, (3) Defendant Jones violated his constitutional rights in striking him with a gun while he was

handcuffed and in the car, and (4) all four defendants violated his constitutional rights in failing to provide medical care for more than thirty minutes following the shooting. (Dkt. 1). The Magistrate Judge allowed Plaintiff to proceed on his claims of excessive force and deliberate indifference. (Dkt. 4).

Defendants moved for summary judgment, claiming qualified immunity on all Plaintiff's claims. (Dkt. 50). The Magistrate Judge issued a Final R&R recommending summary judgment on Plaintiff's claims arising from the initial shooting, the alleged deprivation of air, and the alleged delay in providing medical care. (Dkt. 60). The Magistrate Judge recommended the denial of summary judgment on Plaintiff's claim that Investigator Jones used excessive force in striking Plaintiff with a handgun while Plaintiff was handcuffed and sitting in Ms. Belk's car. *Id.* Investigator Jones objected to that recommendation, challenging the Magistrate Judge's conclusion that Investigator Jones's use of force was unreasonable. (Dkt. 62).

Plaintiff filed an objection "to every enumeration of the Court [sic] Final Report & Recommendation in regards to the Defendants [sic]

Summary Judgment."[2]  (Dkt. 63).  Plaintiff also moved to amend his complaint to allege that Investigator Beach, not Investigator Spears, "attempted to prevent [Plaintiff] from sitting up immediately after the shooting."  *Id.* at 2.

## II.   Legal Standard

When reviewing an R&R, the district court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."  28 U.S.C. § 636(b)(1).   "Parties filing objections to a magistrate's report and recommendation must specifically identify those findings objected to. Frivolous, conclusive, or general objections need not be considered by the district court."  *United States v. Shultz*, 565 F.3d 1353, 1361 (11th Cir. 2009).  Absent proper objections, the Court "may accept, reject, or modify, in whole or in part, the findings and recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1).

Summary judgment is appropriate where the pleadings, the discovery and disclosure materials on file, and any affidavits show that

---

[2] Although Plaintiff does not identify the R&R's conclusions to which he objects with the required specificity, the Court will review each of the R&R's conclusions de novo.

there is no genuine issue as to any material fact and that the moving party is entitled to judgement as a matter of law. *See* Fed. R. Civ. P. 56. The Court must view the evidence in the light most favorable to the non-movant and draw all inferences in favor of the non-movant, but only "to the extent supportable by the record." *Garczynski v. Bradshaw,* 573 F.3d 1158, 1165 (11th Cir. 2009).

In the context of qualified immunity, the Court "resolve[s] all issues of material fact in favor of the plaintiff, and then determine[s] the legal question of whether the defendant is entitled to qualified immunity under that version of the facts." *Durruthy v. Pastor*, 351 F.3d 1080, 1084 (11th Cir. 2003). The facts, as accepted at this stage in the proceedings, "may not be the actual facts of the case. Nevertheless, for summary judgment purposes, our analysis must begin with a description of the facts in the light most favorable to the Plaintiff." *Lee v. Ferraro*, 284 F.3d 1188, 1190 (11th Cir. 2002) (internal quotations and citations omitted). So, "[w]ith the plaintiff's best case in hand, the court is able to move to the question of whether the defendant committed the constitutional violation alleged in the complaint without

having to assess any facts in dispute." *Robinson v. Arrugueta*, 415 F.3d 1252, 1257 (11th Cir. 2005).

## III.  Analysis

"Qualified immunity offers complete protection for government officials sued in their individual capacities if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002).  As such, "[q]ualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions." *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011).  Qualified immunity allows officials to "carry out their discretionary duties without the fear of personal liability or harassing litigation." *Lee*, 284 F.3d at 1194.  "When properly applied, [qualified immunity] protects all but the plainly incompetent or those who knowingly violate the law." *Ashcroft*, 563 U.S. at 743.

Qualified immunity may attach only when the officer is "acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." *Grider v. City of Auburn, Ala.*, 618 F.3d 1240, 1254 n.19 (11th Cir. 2010).  A public official acts within the scope of his

discretionary authority where the acts complained of were "undertaken pursuant to the performance of his duties" and "within the scope of his authority." *See Rich v. Dollar,* 841 F.2d 1558, 1564–65 (11th Cir. 1988). "Once the defendant establishes that he was acting within his discretionary authority, the burden shifts to the plaintiff to show that qualified immunity is not appropriate." *Id.* at 1564–65. Here, there is no question that Defendants acted within the scope of their discretionary authority when arresting Plaintiff. *See, e.g., Wate v. Kubler*, 839 F.3d 1012 (11th Cir. 2016) (officers acting within discretionary authority when arresting a suspect). Plaintiff, thus, has the burden of showing that qualified immunity is unavailable to Defendants.

The qualified immunity analysis presents two questions: first, whether the allegations taken as true establish the violation of a constitutional right; and second, if so, whether the constitutional right was clearly established when the violation occurred. *Hadley v. Guitierrez,* 526 F.3d 1324, 1329 (11th Cir. 2008). These distinct questions "do not have to be analyzed sequentially; if the law was not clearly established; [the Court] need not decide if the defendants

actually violated the [Plaintiff's] rights, although [the Court] is permitted to do so." *Fils v. City of Aventura*, 647 F.3d 1272, 1287 (11th Cir. 2011).

A determination of whether a constitutional right was clearly established "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Saucier v. Katz,* 533 U.S. 194, 201 (2001), *overruled in part on other grounds by Pearson v. Callahan,* 555 U.S. 223 (2009). "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable state actor that his conduct was unlawful in the situation he confronted." *Id.* at 202. "If the law did not put the officer on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate." *Id.*

### A.   Claims Arising from Initial Shooting

The Court adopts the Magistrate Judge's reasoning and conclusion that all Defendants are entitled to summary judgment on Plaintiff's claims arising from the initial shooting. The officers' actions in shooting Plaintiff at the time of his arrest constituted the use of deadly force. The Fourth Amendment requires that a seizure by the use of deadly

11

force be objectively reasonable in the circumstances. *See Tennessee v. Garner*, 471 U.S. 1, 7 (1985) (apprehension by use of deadly force is a seizure subject to Fourth Amendment's reasonableness requirement).

The Eleventh Circuit has stated that "reasonableness is dependent on all the circumstances that are relevant to the officer's decision to use deadly force, including the seriousness of the crime, whether the suspect poses an immediate danger to the officers or others, whether the suspect resisted or attempted to evade arrest, and the feasibility of providing a warning before employing deadly force." *Jean-Baptist v. Gutierrez*, 627 F.3d 816, 821 (11th Cir. 2010).  An officer may only use deadly force during an arrest "to dispel a threat of serious physical harm to either the officer or others." *Singletary v. Vargas*, 804 F.3d 1174, 1181 (11th Cir. 2015); *Robinson v. Arrugueta*, 415 F.3d 1252, 1256 (11th Cir. 2005) (holding officer may use deadly force only against person officer perceives as posing imminent risk of serious physical harm to officer or others).  "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene" – an objective analysis.  *Graham v. Connor*, 490 U.S. 386, 396-97 (1989).  And the Court "must see the situation through the eyes of the

12

officer on the scene who is hampered by incomplete information and forced to make a split-second decision between action and inaction in circumstances where inaction could prove fatal." *Crosby v. Monroe City*, 394 F.3d 1328, 1334 (11th Cir. 2004). Finally, the court must recognize that these split-second decisions occur "in circumstances that are tense, uncertain, and rapidly evolving." *Graham,* 490 U.S. at 397.

Plaintiff's claim that the officers unreasonably used deadly force conflicts with nearly every fact and circumstance surrounding his arrest. It is undisputed that, at the time of the shooting, Plaintiff was wanted for murder, was known by the officers to be armed and dangerous, and was in possession of a sawed-off shotgun that he pointed at himself. And for the purposes of deciding Defendants' motion for summary judgment, the Court must accept the basis for the Plaintiff's conviction for aggravated assault on a police officer – specifically, that Plaintiff pointed the sawed-off shotgun at Investigator Jones moments before Investigator Daniels shot Plaintiff.

Plaintiff admits that he had the shotgun in his hands when the officer shot him and that he placed the barrel of the weapon to his chin because he was contemplating suicide. Dkt. 1 at 8. He also admits that

he then "instinctively turned" towards one of the officers as he heard the officer approaching the car.  Dkt. 54 at 3.  He denies, however, that he "intentionally" pointed the shotgun at the approaching officer.  *Id.* Of course, this allegation does not foreclose the possibility that he "unintentionally" pointed the gun at the officer.  So Plaintiff has not directly challenged the factual allegation from Investigators Daniels, Wilson, and Jones that Plaintiff pointed the shotgun in the direction of Investigator Jones in the moments before Investigator Daniels shot him.  *See* Dkts. 50-3 at 6; 50-4 at 6; 50-5 at 4.

Even if Plaintiff explicitly alleged that he never pointed the gun in the direction of the officer, the Court would reject that allegation as an inappropriate attack on his state conviction.  The Supreme Court has held "when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated."  *Heck v. Humphrey*, 512 U.S. 477, 487 (1994).  The Eleventh Circuit has held that *Heck* precludes claims under § 1983 that "if successful, would

14

necessarily imply the invalidity of the conviction because they would negate an element of the offense." *Hughes v. Lott*, 350 F.3d 1157, 1160 n.2 (11th Cir. 2003).   To determine whether such a negation would occur, the Court must look at both the claims raised in the § 1983 action and "the specific offenses for which the § 1983 claimant was convicted." *Id.*

Plaintiff's conviction for aggravated assault, aggravated battery, and aggravated assault on a peace officer were premised on his having pointed the gun at Investigator Jones as Investigator Jones approached the vehicle.  Dkt. 54-8 at 8-10.  So, if Plaintiff were to recover on his claim that the officers shot him without justification, it would cast doubt on an essential element of the offense for which he was convicted. Any allegation that Plaintiff did not point the shotgun at the officer is the type of attack on a prior conviction that the Supreme Court has held impermissible.

Assuming, however, that Plaintiff could rely on an allegation that he did not point the shotgun at Investigator Jones but instead kept it pointed it at his own head while contemplating suicide, that allegation would still not change the outcome.  *See* Dkt. 54-3 at 1.  The Fourth

15

Amendment does not require an officer "in a tense and dangerous situation to wait until the moment a suspect uses a deadly weapon to act to stop the suspect." *Long v. Slaton*, 508 F.3d 576, 581 (11th Cir. 2007). When, as here, an officer reasonably perceives an immediate and grave threat, specifically knowing Plaintiff to be dangerous and holding a weapon, the use of lethal force is reasonable under the circumstances. *See Garczynski v. Bradshaw*, 573 F.3d 1158, 1169 (11th Cir. 2009) (finding no excessive force where Plaintiff proclaimed his intent to commit suicide and did not point the gun at the officers because "there was nothing to prevent him from shooting at the officers in an instant."). "[A]n officer is not required to wait until an armed and dangerous felon has drawn a bead on the officer or others before using deadly force." *Montoute v. Carr*, 114 F.3d 181, 185 (11th Cir. 1997).

Under these facts, a reasonable police officer at the scene would have concluded that Plaintiff posed an imminent threat of serious physical harm to Investigator Jones and the other officers, thus justifying the use of deadly force. *See Montoute*, 114 F.3d at 184 (noting that an officer would perceive risk because sawed-off shotguns are "specially designed or altered, and frequently used, by criminals to

16

kill people"). And while Plaintiff criticizes the officers for not having provided a warning, a reasonable officer at the scene would have concluded that it was not feasible to do so before the use of deadly force. *See Garner*, 471 U.S. at 11-12 (warning only necessary when feasible); *Carr v. Tatangelo*, 338 F.3d 1259, 1269 n.19 (11th Cir. 2003) ("For all [the officer] knew, the hesitation involved in giving a warning could readily cause such a warning to be his last."). The Court adopts the Magistrate Judge's conclusion that Investigator Daniel's split-second decision to shoot was objectively reasonable under the totality of the circumstances and was not a constitutional violation.

Because the Court finds that Defendants' conduct did not violate Plaintiff's constitutional rights, the Court need not address the second question in the qualified immunity analysis. It is clear, however, that Plaintiff could not show Defendants' actions violated clearly established law. Plaintiff has identified no such case, and the Court has not found one. To the contrary, as explained above, it was clearly established that an officer could use deadly force "to dispel a threat of serious physical harm to either the officers or others." *Singletary v. Vargas*, 804 F.3d 1174, 1181 (11th Cir. 2015) ("it is well established that an officer may

17

constitutionally use deadly force when his life is threatened by a car that is being used as a deadly weapon."). For this reason, even if the Court were to conclude that the conduct violated Plaintiff's constitutional rights, Defendants would still be entitled to qualified immunity on the claims arising from the initial shooting.

### B.   Restraint of Plaintiff During Arrest

In his initial complaint, Plaintiff alleged that Officer Spears used excessive force by "placing resistace [sic] on [Plaintiff's] hands" while blood filled his lungs and that he was "deprived of air." Dkt. 1 at 9-10. In various pleadings filed in opposition to summary judgment, Plaintiff made slightly different factual allegations. In his brief, Plaintiff states that he was "pinned down as he struggled for air in need of urgent medical attention." Dkt. 54-3 at 1. In his statement of material facts, he adds an allegation that he was "deprived of medical treatment." Dkt. 54-1 at 2. Finally, in his declaration, he states that Investigator Spears "restrained [his] movements giving a false impression of medical aid," that he had trouble breathing, believed that he needed to sit up to breath better, and "asked [the officer] to remove

her hands so [Plaintiff] could sit up for a breath and so the blood couldn't fill [Plaintiff's] mouth." Dkt. 54 at 3.

In determining whether force used during an arrest is unreasonable, and thus excessive, courts consider: (1) the severity of the crime at issue; (2) whether the suspect poses an immediate threat to the safety of the officers and others; (3) whether the suspect is actively resisting arrest or trying to evade arrest by flight; (4) the need for the application of force, (5) the relationship between the need and amount of force used, and (6) the extent of the injury inflicted. *See Lee v. Ferraro*, 284 F.3d 1188, 1198 (11th Cir. 2002). The Court assesses these considerations from the perspective of a reasonable officer. *Id.* The Due Process Clause of the Fourteenth Amendment also requires government officials to provide medical care to individuals who are injured during an arrest. *Valderrama v. Rousseau*, 780 F.3d 1108, 1116 (11th Cir. 2015). The Eleventh Circuit has explained that, to establish a claim based on the deprivation of medical care, a plaintiff must show that "(1) the officer was aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, (2) the officer actually drew that inference, (3) the officer disregarded the risk of

19

serious harm, and (4) the officer's conduct amounted to more than gross negligence." *Id.*

The Defendants have presented undisputed evidence that Investigator Spears was not present right after the shooting and did nothing to deprive Plaintiff of air. *See* Dkt. 50-6 at 2-3. Upon her arrival, she took a statement from Investigator Daniels but never administered medical aid to Plaintiff, placed resistance on him, or did anything to deprive him of air. *Id.* at 3. Plaintiff has failed to provide any evidence that contradicts this evidence or that would allow a reasonable factfinder to return a verdict against Investigator Spears. For that reason, this Court adopts the Magistrate Judge's recommendation that Investigator Spears is entitled to summary judgment on the claim that she violated his Fourth Amendment rights by denying him air in the moments following the shooting.

In his objections to the R&R, Plaintiff admits that Investigator Spears was not at the scene at the time of the shooting and was not the officer that allegedly held him down. Dkt. 63 at 2. So he asks to amend his complaint to assert the same claims against Investigator Beach, who has been identified as the officer who held napkins to Plaintiff's

head following the shooting.  *Id.*  Such an amendment would be futile because whichever officer held him down did not unconstitutionally deny him medical care, use excessive force, or violate clearly established law so as to avoid qualified immunity.

The undisputed facts, viewed in the light most favorable to Plaintiff, show that Investigator Beach tried to provide medical aid to Plaintiff after he had been shot and while waiting for the ambulance to arrive.  Unable to find bandages, she held napkins to the gunshot wound on his head in an attempt to lessen the bleeding.  Applying that pressure certainly required the application of some force to Plaintiff's head and some restraint of his movement.  Plaintiff seems to allege that this restraint amounted to the denial of medical care and constituted excessive force because – in his view – his physical condition required him to sit up to breathe better and the restraint prevented him from doing so.  Dkts. 1 at 8-9; 54 at 3.  He also claims that he told the officer he needed to sit up.  Dkt. 54 at 3.  Eventually, he removed her hands from his head and sat up.  Dkts. 1 at 9; 54 at 3.

The officer's actions did not amount to excessive force under the circumstances.   The  evidence  shows  that  the  officer  restrained

Plaintiff's movement because she thought doing so was necessary to render medical aid. There is no evidence that she applied any greater force than was necessary to provide that medical care. And Plaintiff suffered no permanent injury from the restraint and ultimately freed himself so he could sit up (although the Court does not discount the discomfort he felt before doing so). For these reasons, the Court finds that the force applied was reasonable and not excessive under the circumstances. This conclusion is supported by the facts that Plaintiff was being arrested for a violent crime, was known by the police to be armed and dangerous, and had pointed a sawed off shotgun at Investigator Jones. Although Plaintiff may have posed less of a threat to the officers after he had been shot and was handcuffed, he still retained some range of movement as evidenced by his ability to struggle against the officer and remove her hands from his head. Plaintiff was also still seated in the car, and there is no evidence that the car had been cleared of all possible weapons. A reasonable officer in the situation who was providing medical care would still believe that Plaintiff posed a risk to the officers and that it was necessary to restrain him to some extent at the time.

22

The officer's actions also do not amount to an unconstitutional deprivation of medical care.  It is undisputed that the officer recognized the need for medical care and provided that care.   Even if it was medically appropriate for Plaintiff to sit up (or believe he needed to do so), the officer's actions in restraining Plaintiff while assisting him amounts to no more than simple negligence or a good-faith mistake by a non-medical person.  The officer was providing medical care and there is no evidence that the officer knew her actions posed a risk of serious bodily harm, that the officer disregarded that risk, or that the officer's conduct amounted to more than gross negligence.

Plaintiff also has not shown that the officer's conduct violated clearly established law so as to defeat qualified immunity.  "For a right to be clearly established, previous case law must have developed in a concrete factual context so as to make it obvious to a reasonable government actor that his actions violated federal law."  *Hadley,* 526 F.3d at 1329.  Plaintiff has cited no case – and the Court has identified no case – with facts remotely similar to those at issue here in which a government actor was found to have violated an individual's constitutional rights.  As such, even if the Court were to find that the

23

officer's alleged conduct constituted excessive force or violated Plaintiff's constitutional right to medical care, that officer would still be entitled to qualified immunity. *See White v. Pauly,* 137 S.Ct. 548, 552 (2017) (reiterating "the longstanding principle that 'clearly established law' should not be defined at a high level of generality" but rather "must be 'particularized' to the facts of the case").

The Magistrate Judge correctly concluded that summary judgment on this claim is appropriate.

### C.   Investigator Jones's Firearm Strike

Plaintiff's final excessive-force claim stems from his allegation that Investigator Jones struck him with a pistol, chipping his tooth, after the officers handcuffed him.[3]  The Magistrate Judge found that the alleged pistol strike amounted to a constitutional violation, finding that "[t]here is no indication that Plaintiff still posed an immediate threat to the safety of the officers or that he was actively resisting arrest, and the evidence presented does not show that significant force – such as a strike in the face with a gun – was reasonable in the

---

[3] Investigator Jones denies striking Plaintiff. *See* Dkt. 50-5 at 6 ("At no time during the altercation did I hit Mr. Wade in the mouth with the weapon, nor did I see anyone else hit Mr. Wade in the mouth with their weapon.").

circumstance." Dkt. 60 at 30.  As a result, the Magistrate Judge concluded that Investigator Jones was not entitled to qualified immunity. *Id.*

Investigator Jones objected to the R&R, arguing that his actions were reasonable under the circumstances.  *See* Dkt. 62.  Investigator Jones claims the record contains no evidence that Plaintiff was compliant after being shot or that he was handcuffed at the time of the alleged strike.  *Id.* at 3-4.  Investigator Jones also argues that Plaintiff's admission that he removed Investigator Spears's hands from his "cranium" just before the alleged strike shows that Plaintiff was not handcuffed or incapacitated at the time.  *Id.* at 4.  Investigator Jones thus argues that striking plaintiff was reasonable under the circumstances.

The Magistrate Judge and Investigator Jones have differing opinions about whether Investigator Jones's conduct violated Plaintiff's constitutional rights.  The issue is open to debate.  The Magistrate Judge properly concluded that Plaintiff was handcuffed at the time of

the alleged strike.[4]  And Plaintiff had obviously been shot.  These facts – of course – weigh in favor of finding that Investigator Jones acted unreasonably and used excessive force in striking Plaintiff with his pistol.

On the other hand, the undisputed evidence shows that Plaintiff was not fully compliant after the shooting and continued to struggle, even after being handcuffed.  By his own admission, Plaintiff pushed against the officer who was rendering aid.  He did not want the officer restricting his movements, struggled against her, and placed his hands on her to free himself.  He admits that, despite having been shot and put in handcuffs, he maintained sufficient strength and mobility to resist the officer.  He even admits that he wrested himself free – though momentarily – from the arresting officers.  Finally, he admits that his struggle against the officer providing medical care precipitated or caused Investigator Jones to strike him.

---

[4] While not included in his complaint, Plaintiff alleged in the Opposition to Summary Judgment that he was handcuffed at the time of the blow. *See* Dkt. 54-3.  And Defendants' affidavits suggest that Plaintiff was handcuffed immediately after Investigator Beach opened the door to the vehicle.  Dkt. 50-5 at 5. The Court accepts that allegation as true for the purposes of deciding Defendants' motion for summary judgment.

All of this happened against the backdrop of the other facts discussed above. The officers were arresting Plaintiff for the murder of an 18-month old boy. They knew Plaintiff was armed and dangerous. Plaintiff possessed an illegal and dangerous shotgun. *See Montoute*, 114 F.3d at 184. He had pointed that shotgun at an officer. With this knowledge, Investigator Jones witnessed Plaintiff struggle against the officer rendering medical care. The struggle – however short – occurred when Plaintiff was still in his car. The other officers may have removed his shotgun, but there is no suggestion that they had searched his entire car to confirm he had no other weapons. And because he was still strong enough to struggle against the officer rendering medical aid, a reasonable officer could have concluded that Plaintiff was a threat to the officer with his hands. Finally, while Plaintiff claims he was struggling against the officer so he could breathe better (rather than as a threat to her), he does not allege Investigator Jones knew this.[5]

A reasonable officer in Investigator Jones's position may have believed that Plaintiff was struggling against the officer providing

---

[5] Plaintiff alleges that he told the officer rendering medical aid that he needed to sit up. Dkt. 54 at 3. But he does not allege that he said this loudly enough for Investigator Jones (who was outside the car) to hear him or that Investigator Jones, in fact, heard the statement.

medical aid, that Plaintiff continued to pose a risk to her or the other officers, and that the strike was necessary to subdue Plaintiff and protect the officers.   Investigator Jones was in a tense situation, requiring a split-second decision when he saw Plaintiff struggling against the officer such that he removed her hands from his head. These facts and circumstances suggest that Investigator Jones's alleged use of force was not unreasonable.   *See Mobley v. Palm Beach Cty. Sheriff Dep't*, 783 F.3d 1347, 1356 (11th Cir. 2015) ("[F]orce applied while the suspect has not given up and stopped resisting and may still pose a danger to the arresting officers, even when that force is severe, is not necessarily excessive.").

The Court, however, need not decide whether Investigator Jones used excessive force because his conduct did not violate clearly established law so as prevent qualified immunity.   *See Fish v. Brown*, 838 F.3d 1153, 1163 (11th Cir. 2016) ("in appropriate cases, it is within the district court's discretion to assume that a constitutional violation occurred in order to address, in the first instance, the question of whether such a presumed violated was clearly established").   In *White v. Pauly*, the Supreme Court reiterated "the longstanding principle that

28

'clearly established law' should not be defined 'at a high level or generality.'" *White*, 137 S.Ct. at 552.  The Supreme Court held that to defeat a claim of qualified immunity, a plaintiff must "identify a case where an officer acting under similar circumstances as [the defendant] was held to have violated the Fourth Amendment." *Id.*   "[G]eneral statements of the law are not inherently incapable of giving fair and clear warning to officers." *Id.*  Instead, "the clearly established law must be particularized to the facts of the case." *Id.*  The Supreme Court has also explained that avoiding qualified immunity does "not require a case directly on point, but existing precedent must have placed the statutory constitutional question beyond debate." *Mullenix v. Luna*, 136 S.Ct. 305, 308 (2015).  This standard "gives government officials breathing room to make reasonable but mistaken judgments by 'protect[ing] all but the plainly incompetent or those who knowingly violate the law.'" *City & Cty. of San Francisco v. Sheehan*, 135 S.Ct. 1765, 1774 (2015).

Plaintiff has failed to satisfy this standard.  Plaintiff points to no case (and the Court is aware of none) in which a court found that an officer acting in circumstances similar to those facing Investigator Jones

violated the Fourth Amendment.  For sure, the Eleventh Circuit has held that the "gratuitous use of force when a criminal suspect is not resisting arrest constitutes excessive force."  *Hadley,* 526 F.3d at 1330 (affirming denial of qualified immunity when suspect was punched while handcuffed and not resisting officers); *Slicker v. Jackson*, 215 F.3d 1225, 1233 (11th Cir. 2000) (affirming denial of qualified immunity when officers repeatedly punched and kicked defendant after he was handcuffed and not resisting); *Smith v. Mattox*, 127 F.3d 1416, 1418 (11th Cir. 1997) (holding officer used excessive force when he broke arm of suspect who "docilely submitted to arrest upon [the officer's] request for him to 'get down'").  The Eleventh Circuit has also held that "an unwarranted pistol whip lies at the core of what the Fourth Amendment prohibits."  *Walker v. City of Riviera Beach*, 212 F. App'x 835, 839 (11th Cir. 2006) (noting that the suspect posed "no threat or risk" to officer at the time of the strike).

The facts here are vastly different than the facts in those cases. The suspects in those cases had stopped resisting, submitted to their arrests, and posed no threat to the officers when they were struck.  On the other hand, Plaintiff admits that he struggled against the officer as

30

she tried to staunch the bleeding from Plaintiff's wounds. While handcuffed, he was able to place his hands on the officer and remove her hands from his head. He also remained in a car that had not yet been cleared of all weapons. The officers had not yet completely secured Plaintiff, the arrest had not been fully effected, and danger had not yet been completely vitiated. *Compare Lee*, 284 F.3d at 1200 (holding that severe force is not appropriate "once an arrest has been fully secured and any potential danger or risk of flight vitiated."). The cases cited above could not possibly have provided Investigator Jones clear warning that striking Plaintiff as he struggled against his fellow officer was unconstitutional. To the contrary, the Eleventh Circuit has held that "force applied while the suspect has not given up and stopped resisting and may still pose a danger to the arresting officers, even when that force is severe, is not necessarily excessive." *Mobley*, 783 F.3d at 1356.

Nor is this case factually similar to the situation in *Baltimore v. City of Albany*, 183 F. App'x. 891 (11th Cir. 2006). In that case, the defendant officers came upon the plaintiff in a crowd, saw him carrying a bottle, and believed that he was violating the city's open-container law. *Id.* at 893. The officers approached the suspect, and a

confrontation ensued, in which several members of the crowd accosted the officers.   The officers tried to arrest the plaintiff and, when he struggled, placed him in a chokehold.   *Id.*   The plaintiff continued to struggle and another officer struck him in the back of his head with his flashlight, bringing him to his knees.   *Id.*   The Eleventh Circuit held that it was clearly established that officers could not strike a suspect in the head with a heavy flashlight while trying to arrest him for a **misdemeanor violation** of an open container ordinance when the suspect posed **no greater risk** to the officer.   *Id.* at 899 (emphasis added).   The type of criminal violation and lack of serious threat to the officers were essential to the court's holding.

The circumstances facing Investigator Jones here are "fairly distinguishable" from the circumstances facing the officer in *Baltimore*. *Vinyard*, 311 F.3d at 1352.   In *Baltimore*, Plaintiff had been suspected only of violating a city ordinance, an open-container law.   *Baltimore*, 183 F. App'x. at 899.   While he resisted arrest, he posed no greater threat to the officers.   *Id.*   Here, in contrast, the officers suspected Plaintiff of committing malice murder, knew him to be armed and dangerous, and found him on the scene wielding a sawed-off shotgun.

Plaintiff posed significant risk to the officers. He pointed a sawed-off shotgun at the officers, and even after being handcuffed, continued to struggle. The gravity of the threat posed by Plaintiff to the officers, as well as the seriousness of the crimes for which they sought to arrest him, separate this case from the situation faced by the officers in *Baltimore*.[6]

The Eleventh Circuit has also held that striking a resisting felon with a blunt instrument in the head does not necessarily amount to excessive force. *See Garrett v. Athens-Clarke County*, 378 F.3d 1274 (11th Cir. 2004) (striking resisting suspect on the top of head with butt of gun– combined with use of pepper spray and fettering – did not violate plaintiff's Fourth Amendment rights). Certainly *Garrett* can be distinguished from the facts at issue here. But neither that case nor any other materially similar case would have provided "fair warning" to a reasonable officer that striking Plaintiff with a pistol, under the circumstances faced by Investigator Jones, amounted to excessive force.

---

[6] *Baltimore* is also "incapable of clearly establishing law for qualified-immunity purposes" because it is an unpublished opinion. *Trotter v. Shull*, __ F. App'x ____, 2017 WL 6492636, at *2 (11th Cir. Dec. 19, 2017) ("an unpublished opinion is incapable of clearly establishing law for qualified-immunity purposes").

Because Investigator Jones did not violate clearly established law, he is entitled to qualified immunity. The Court therefore does not adopt the Magistrate Judge's recommendation denying Investigator Jones's motion for summary judgment, but rather grants that motion on the grounds that Investigator Jones is entitled to qualified immunity.

### D.   Deliberate Indifference to Plaintiff's Medical Needs

Plaintiff next claims that Defendants unreasonably delayed his medical treatment in violation of the Due Process Clause of the Fourteenth Amendment. To show a violation of this right to medical care, a plaintiff must both show the existence of a serious medical need and that the officers were deliberately indifferent to it. *Valderrama v. Rousseau*, 780 F.3d 1108, 1116 (11th Cir. 2015). Plaintiff's injuries were obviously serious. So the question is whether the officers showed deliberate indifference, that is, whether they "disregarded the risk of serious harm" in a way that "amounted to more than gross negligence." *Id.*

No evidence suggests the officers disregarded the risk of serious harm. To the contrary, and as stated above, the undisputed facts show that the officers on the scene provided immediate medical attention to

34

the best of their ability.  One of the officers – presumably Investigator Beach – applied pressure to Plaintiff's wound while waiting for the ambulance.  Investigator Wilson also instructed another officer to request an ambulance.

Both the "shots fired" report and the request for an ambulance were made over the radio at 2:07 p.m.  The ambulance arrived at 2:16 and transported Plaintiff to the hospital at 2:39.  Viewed in the light most favorable to Plaintiff, the evidence shows that Investigator Daniels may have shot Plaintiff at 2:03 – meaning a possible delay of four minutes from the shooting until the request for an ambulance. Such a delay before medical treatment may give rise to a due process claim when coupled with evidence of intentional delay or indifference to the suspect's medical condition.  For example, in *Valderrama* the Eleventh Circuit found deliberate indifference where the officer waited three-and-a-half minutes after shooting the plaintiff before calling an ambulance.  *See id*.  But in *Valderrama*, the plaintiff presented evidence that the officers ignored his pleas for help, stopped to talk for several minutes before calling the ambulance, and lied about the

severity of the injury to the medical dispatch, resulting in a delay.  *See id.*

Plaintiff has introduced no such evidence here.  To the contrary, the evidence shows that the officers tended to his medical needs as best they could immediately and until the ambulance arrived.  To the extent the evidence can be read to show a four minute delay, there is no evidence that the officers intentionally delayed the request for an ambulance.  Plaintiff fails to establish that Defendants were deliberately indifferent to his medical needs, let alone that Defendants violated clearly established law.  The Court, therefore, adopts the Magistrate Judge's conclusion that Defendants are entitled to summary judgment on this claim.

## IV.   Plaintiff's Motion to Amend

In his objections to the R&R, Plaintiff states that he would like to amend his complaint to add a defendant, Investigator Beach, who Plaintiff alleges "attempted to prevent [him] from sitting up immediately after the shooting."  But because Plaintiff's excessive force

claim stemming from these facts are subject to dismissal on qualified immunity grounds, amendment to add or substitute a defendant here would be futile. *See Burger King Corp. v. Weaver*, 169 F.3d 1310, 1320 (11th Cir. 1999) ("This court has found that denial of leave to amend is justified by futility when the complaint as amended is still subject do dismissal."). Plaintiff's request for leave to amend his complaint is denied.

### V.   Conclusion

For the reasons set forth above, the Magistrate Judge's Report and Recommendation is **ADOPTED IN PART** and **OVERRULED IN PART**. (Dkt. 60). The Court **GRANTS** Defendants' Motion for Summary Judgment as to all defendants. (Dkt. 50). The Court further **DENIES** Plaintiff's Motion to Amend. Plaintiff's Motion to Appoint Counsel is also **DENIED AS MOOT**. (Dkt. 64). The Clerk is **DIRECTED** to enter judgment and close the case.

IT IS SO ORDERED.


Dated: May 9, 2018
Atlanta, Georgia

MICHAEL L. BROWN
UNITED STATES DISTRICT JUDGE